**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3083
_____

FREEDOM FROM RELIGION FOUNDATION INC;
DOE 1, by Doe 1's next friend and parent, Marie Schaub;
MARIE SCHAUB, who also sues on her own behalf

v.

NEW KENSINGTON ARNOLD SCHOOL DISTRICT

Freedom From Religion Foundation, Inc.; Marie Schaub,
Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:12-cv-01319)
District Judge: Hon. Terrence F. McVerry
_____

Argued: May 19, 2016
_____

Before: SMITH, HARDIMAN, and SHWARTZ, <u>Circuit
Judges</u>

(Opinion Filed:  August 9, 2016)

Patrick C. Elliott
Freedom from Religion Foundation
10 North Henry Street
Madison, WI 53703

Marcus B. Schneider [ARGUED]
Steele Schneider
428 Forbes Avenue, Suite 700
Pittsburgh, Pennsylvania 15219
        *Counsel for Appellants*

Christine Lane
Anthony G. Sanchez [ARGUED]
Sanchez Legal Group, LLC
2403 Sidney Street, Suite 242
River Park Commons
Pittsburgh, Pennsylvania 15219
        *Counsel for Appellee*

Richard B. Katskee
Alexander J. Luchenitser
Americans United for Separation of Church & State
1901 L Street, N.W.
Suite 400
Washington, DC 20005

Stephen M. Shapiro
Charles M. Woodworth [ARGUED]
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Brian D. Netter
Mayer Brown LLP
1999 K Street, NW
Washington, DC 20006

Steven M. Freeman
David L. Barkey
Anti-Defamation League
605 Third Avenue
New York, NY 10158

Jeffrey I. Pasek
Cozen O'Connor
1650 Market Street
Philadelphia, PA 19103

Harsimran Kaur
Gurjot Kaur
The Sikh Coalition
50 Broad Street, Suite 1537
New York, NY 10004
        *Counsel for Amicus Curiae*

—————————

OPINION

—————————

SHWARTZ, <u>Circuit Judge</u>.

Marie Schaub, her daughter Doe 1, and the Freedom From Religion Foundation ("FFRF") (collectively, "Appellants") brought suit under 42 U.S.C. § 1983, alleging

that the New Kensington-Arnold School District ("the District") violates the Establishment Clause by maintaining a monument of the Ten Commandments at its public high school. The District Court granted the District's summary judgment motion, concluding that the Appellants lack standing and their request for injunctive relief is moot. Because Schaub has standing to seek both nominal damages and injunctive relief, and her request for injunctive relief is not moot, we will reverse the District Court's order dismissing her claims. We will vacate the order dismissing FFRF's claims to allow the District Court to consider whether Schaub was a member of FFRF at the time the complaint was filed. As to Doe 1, we need not address whether she has standing to obtain an injunction, but conclude that the District Court correctly found that she lacks standing to seek nominal damages, and we will affirm the order granting the District summary judgment with respect to this claim.

I

In 1956, the New Kensington Fraternal Order of the Eagles, a non-profit charitable organization, donated a six-foot granite monument inscribed with the Ten Commandments to be placed on the grounds of Valley High School in New Kensington. The donation was part of a nationwide program spearheaded by the Eagles' Youth Guidance Committee through which local chapters of the organization donated over 140 such monuments. The Committee believed that troubled young people would benefit from exposure to the Ten Commandments as a code of conduct. In addition to the text of the Ten Commandments, the tablet is adorned with images of an eagle, an American flag, the Star of David, the Chi-Rho symbol, a Masonic eye,

and tablets with Hebrew and Phoenician lettering.

The monument is located near the entrance to the high school's gymnasium, which is accessible from the student parking area via two railed footpaths. Anyone entering the school via these paths passes within 15 feet of the monument. The parties disagree about how closely one must approach the monument in order to read its text.

On March 20, 2012, FFRF, an organization dedicated to promoting separation of church and state, wrote a letter to the Superintendent of the District requesting that the monument be removed. The school board rejected the request. Local media reported on the letter and the school board's decision. Schaub saw one such story on television, and contacted FFRF through its website. She states that she has "been a member of FFRF since August 2012, when [she] contacted FFRF regarding this lawsuit." App. 734.[1]

Schaub and Doe 1 live within the New Kensington-Arnold School District. Schaub had visited the high school

_____

[1] Schaub was questioned about how she became a member of FFRF during her April 2014 deposition, and was asked "how long are you a member for?" to which she answered, "[t]his year." App. 834. The questioner then said "[i]s that all?" and Schaub responded "[y]es, I believe my membership expires in 2015." App. 834. The District used this exchange to conclude that Schaub was not a member at the time the lawsuit was filed in 2012. The only evidence to support the claim that Schaub was a member when the suit was filed is her December 2014 declaration, which stated that she has "been a member of FFRF since August 2012." App. 734.

and come into contact with the monument in the past while taking Doe 1 to a karate event, picking Doe 1 up from a program at the high school swimming pool, and dropping off her sister, whose child attends the high school, to attend events at the school once or twice. In addition, Doe 1 was scheduled to attend the high school beginning in August 2014, and Schaub planned to drive her to school.

Schaub estimates that from the curb, where she would pull over to drop someone off at the gym's entrance, she could see the monument and make out the title, "The Ten Commandments" as well as the word "Lord," which are printed in a larger font than the remaining text. App. 820-22. The monument can also be seen from the road on which Schaub and Doe 1 frequently travel.

Schaub did not testify that she ever read the full text of the monument, but said that she walked by it and views it as "commanding" students and visitors at the high school to worship "thy God," brands her as "an outsider because [she] do[es] not follow the particular religion or god that the monument endorses," App. 679, and makes her "stomach turn[ ]," App. 824. She wishes to bring up her daughter without religion and "do[es] not want Doe 1 to be influenced by the Ten Commandments monument in front of Valley High School." App. 680.

Doe 1, who identifies as non-religious, recalls walking past the monument to attend the karate event when she was six or seven years old, and to use the high school swimming pool between third and fifth grade, but "never read it," App. 684, "was young so [she] didn't really know what it meant," App. 687, and "didn't really pay attention to it." App. 684.

6

She subsequently "looked at it because [her] mom was [ ] worried about it" and "wanted to see what it was about." App. 684. Specifically, Doe 1 testified that she reviewed a picture of the monument, and has seen it from the road while being driven to a friend's house. When asked at her deposition about her reaction to the monument, Doe 1 testified that she "didn't really feel anything when [she] was young," and right now, does not "feel like [she] ha[s] to believe in god, but . . . [that] since it's there in front of a school that they kind of want you to be that way."[2] App. 864. Appellants concede the record is silent as to whether Doe 1 had this view at the time the complaint was filed.

On September 14, 2012, Appellants filed a complaint in the United States District Court for the Western District of Pennsylvania alleging that the presence of the monument on public school property violates the Establishment Clause and seeking declaratory and injunctive relief, nominal damages, and attorneys' fees.[3] During the pendency of the lawsuit, Schaub and Doe 1's contact and possible contact with the monument continued. Doe 1 attended the eighth grade dinner dance at the high school in May 2014, and she expressed an interest in attending classes at the Northern Westmoreland

---

[2] While the complaint alleges Doe 1 has "felt anxiety over the proposition that the religious monument will" remain at the school, Compl. at 6-7, ECF No. 1, the record shows that Doe 1 did not state any negative feelings about the monument.

[3] Nominal damages are a type of damages awarded for the violation of a right "without proof of actual injury." Carey v. Piphus, 435 U.S. 247, 266 (1978).

7

Career & Technology Center, which is located on the high school campus.

In August 2014, Schaub sent Doe 1 to a different high school, which required her to leave her middle school classmates and attend a school farther from Schaub's home. Schaub avows that were the monument removed from Valley High School, she would permit Doe 1 to enroll there.

After discovery, the parties filed cross-motions for summary judgment. The District Court held that Appellants lack standing and, in any event, their claim for injunctive relief was moot. The District Court observed that appellate courts require plaintiffs bringing Establishment Clause claims to show "direct, unwelcome contact" with the allegedly offensive display, but noted that the cases tended to concern plaintiffs whose contact with a display was "frequent and regular," and a necessary result of accessing government services or fulfilling civic obligations. App. 14 (quoting Vasquez v. Los Angeles Cty., 487 F.3d 1246, 1252 (9th Cir. 2007)). As a result, it interpreted these factors as imposing additional elements to show standing, and held that Doe 1 and Schaub "failed to establish that they were forced to come into direct, regular, and unwelcome contact with the Ten Commandments monument." App. 15 (internal quotation marks omitted). As to Schaub, the District Court found that she had come into contact with the monument just a few times and such exposure was insufficient to confer standing. The District Court also found that she had not shown that her contact was "required" for "necessary matters" or as "part of her regular routine." App. 16. Furthermore, the District Court read Schaub's deposition testimony that "it never occur[ed] to [her]" that the monument was wrongful and she

8

"didn't really think too much about it" when she first saw it to mean that her objections to the monument arose only after FFRF became involved in the controversy, undermining the personal nature of her claims. App. 16.

As to FFRF, the District Court noted that its associational standing was contingent on Schaub's standing and, because she lacked standing, FFRF also lacked standing. As to Doe 1, the District Court found her claim was more "tenuous" than her mother's because she did not seem to recollect seeing the monument in person or feeling affronted by it. App. 16-17.

The District Court also found that Doe 1's attendance at a different high school was irrelevant to standing because standing must exist at the time a complaint was filed, and her attendance at a different school occurred at a later time. The District Court viewed her enrollment at a different school, however, as mooting the request for injunctive relief because the decision to enroll Doe 1 at another school removed any threat of future injury from alleged exposure to the monument. Schaub, Doe 1, and FFRF appeal.

II[4]

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise de novo review over legal conclusions concerning standing and mootness. Perelman v. Perelman, 793 F.3d 368, 373 (3d Cir. 2015) (standing); Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 382 (3d Cir. 1999) (mootness).

A

Standing and mootness are two distinct justiciability doctrines that limit our jurisdiction to cases and controversies in which a plaintiff has a concrete stake. Standing ensures that each plaintiff has "[t]he requisite personal interest . . . at the commencement of the litigation," while mootness ensures that this interest "continue[s] throughout" the duration of the case. Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks omitted).

To establish constitutional standing, "a plaintiff must

---

The District Court, rather than a jury, resolves factual issues relevant to determining whether a party has standing. See Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 72 (1978) (relying on the district court's factual findings from its evidentiary hearing concerning standing issues); N.J. Coal. of Rooming & Boarding House Owners v. Mayor & Council of Asbury Park, 152 F.3d 217, 220 (3d Cir. 1998) (remanding to the district court for "further factual development and a new determination by the district court regarding plaintiffs' standing" because of "insufficient factual findings for us to review its standing determination."). We review those findings for clear error. Perelman, 793 F.3d at 373.

A plaintiff bears the burden of showing standing in the "manner and degree of evidence required at the [particular] stage[ ] of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Thus, "[a]t the summary judgment stage, the plaintiff must produce evidence [of standing] in the form of Fed. R. Civ. P. 56[ ] affidavits or documents . . . ." ACLU-NJ v. Twp. of Wall, 246 F.3d 258, 261 (3d Cir. 2001) (quotations and citations omitted).

show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). The plaintiff has the burden of demonstrating that these requirements are met at the "commencement of the litigation," and must do so "separately for each form of relief sought." Id. at 170, 184-85. In assessing standing, our primary project is to separate those with a true stake in the controversy from those asserting "the generalized interest of all citizens in constitutional governance." Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc., 454 U.S. 464, 483 (1982) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 223 n.13 (1979)).

Mootness "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit." Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993). The party asserting that a claim is moot must show that it is "absolutely clear that the allegedly wrongful behavior [is] not reasonably [ ] expected to recur." Laidlaw, 528 U.S. at 189. "[A] court will not dismiss a case as moot," even if the nature of the injury changes during the lawsuit, if "secondary or 'collateral' injuries survive after resolution of the primary injury." Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 384 (3d Cir. 2001); Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001) ("[T]he question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be

11

any effective relief.").

We first address what a plaintiff must show to have standing to challenge a religious display under the Establishment Clause and then examine whether standing exists to pursue the remedies sought and whether the Appellants' conduct moots the claim for relief.

B

Nearly every court of appeals has held that standing in this context "requires only direct and unwelcome personal contact with the alleged establishment of religion."[5] Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1023 (8th Cir. 2012); see also Cooper v. U.S. Postal Serv., 577 F.3d 479, 491 (2d Cir. 2009) (plaintiff who had "direct contact with religious displays that were made a part of his experience using the postal facility nearest his home" had standing); Vasquez, 487 F.3d at 1253 ("[S]piritual harm resulting from unwelcome direct contact with an allegedly offensive religious . . . symbol . . . suffices to confer Article

---

[5] Our Court has issued rulings in cases concerning religious displays that are consistent with the view that direct, unwelcome contact suffices to confer standing. See Modrovich v. Allegheny Cty., 385 F.3d 397, 399 (3d Cir. 2004) (not mentioning issue of standing, but noting in passing that plaintiffs had alleged "regular, direct and unwelcome" contact with religious display); Freethought Soc'y of Greater Phila. v. Chester Cty., 334 F.3d 247, 255 n.3 (3d Cir. 2003) (dismissing in a footnote the argument that plaintiffs who viewed religious plaque at courthouse occasionally while conducting official business there lacked standing as "not . . . convincing").

III standing."); Am. Civil Liberties Union of Ohio Found., Inc. v. Ashbrook, 375 F.3d 484, 490 (6th Cir. 2004) (plaintiff had standing to challenge display in courtroom because he had "direct, unwelcome contact with the Ten Commandments display"); Suhre v. Haywood Cty., 131 F.3d 1083, 1086 (4th Cir. 1997) ("[D]irect contact with an unwelcome religious exercise or display works a personal injury distinct from and in addition to each citizen's general grievance against unconstitutional government conduct."); Foremaster v. City of St. George, 882 F.2d 1485, 1490 (10th Cir. 1989) ("allegations of direct, personal contact" with religious icon in city logo gave rise to standing); Saladin v. City of Milledgeville, 812 F.2d 687, 692 (11th Cir. 1987) (standing in Establishment Clause cases is established by "direct contact with the offensive conduct").

The District Court appeared to read the direct, unwelcome contact standard to include a frequency requirement. This is incorrect. First, the Supreme Court has made clear that "an identifiable trifle is enough for standing to fight out a question of principle." United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14 (1973); see also Saladin, 812 F.2d at 691 (citing SCRAP and concluding that "[t]here is no minimum quantitative limit required to show injury"); Am. Civil Liberties Union of Ga. v. Rabun Cty. Chamber of Commerce, Inc., 698 F.2d 1098, 1108 (11th Cir. 1983) (concluding that "the Supreme Court has made it clear that no minimum quantitative limit is required to establish injury under either a constitutional or prudential analysis"). Requiring frequent contact with the display to obtain standing is inconsistent with the concept that a single "trifle" is sufficient to establish standing.

13

Second, while many courts have noted the frequency of a plaintiff's actual or expected contact with a religious display, the same courts do not include frequency as a necessary element when stating the applicable rule. See, e.g., Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach, 778 F.3d 390, 394 (2d Cir. 2015) (holding that residents had standing to challenge the erection of a Jewish ritual enclosure of a geographic area which they would "confront[ ] . . . on a daily basis," but stating that standing is found in the religious display context when a plaintiff alleges that he "was made uncomfortable by direct contact with religious displays" (quoting Cooper, 577 F.3d at 491)); Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese, 633 F.3d 424, 429 (6th Cir. 2011) (noting that plaintiff had "frequently and routinely" come into contact with the offensive display, but saying that "'direct and unwelcome' contact with the contested object demonstrates psychological injury in fact sufficient to confer standing"); Vasquez, 487 F.3d at 1252-53 (noting that plaintiff's contact with display "was frequent and regular, not sporadic and remote," but describing majority test among the courts of appeals as "unwelcome direct contact with" a religious display); Suhre, 131 F.3d at 1088, 1090 (holding that plaintiff who came into contact with Ten Commandments display in courtroom during "numerous suits" he was involved with and attended public meetings there had standing, but referring to "direct unwelcome contact with a religious display" as the required standard). For instance, in Pelphrey v. Cobb County, 547 F.3d 1263, 1279-80 (11th Cir. 2008), the court noted that a plaintiff challenging a religious invocation at planning commission meetings had attended three meetings in person and viewed many on the internet, but concluded that standing

14

existed because "the record allow[ed] an inference that [the plaintiff] observed a meeting," not because he did so frequently or regularly. Id. at 1280.

In other cases, courts do not describe contact with a display as particularly frequent, or omit frequency from the discussion completely. See, e.g., Red River, 679 F.3d at 1023-24 (not discussing frequency with which plaintiffs came into contact with display); Am. Atheists, Inc. v. Davenport, 637 F.3d 1095, 1113 (10th Cir. 2010) (same); Books v. Elkhart Cty., 401 F.3d 857, 862 (7th Cir. 2005) (plaintiff would need to pass display "at least once a year in order to pick up a form" as well as if he visited two County departments); Doe v. Cty. of Montgomery, 41 F.3d 1156, 1158 (7th Cir. 1994) (plaintiff came into contact with religious display on a few occasions when registering to vote, obtaining absentee ballots, and performing jury duty). While frequent contact with a religious display may strengthen the case for standing, it is not required to establish standing. But see Green v. Haskell Cty. Bd. of Comm'rs, 568 F.3d 784, 793 (10th Cir. 2009) (reciting test that "[a]llegations of personal contact with a state-sponsored image suffice to demonstrate . . . direct injury" but proceeding to compare the frequency of contact with that in other cases (internal quotation marks omitted)).[6]

While frequent contact with a display is not a requirement for standing, a passerby who is not a member of

---

[6] Imposing a frequency requirement would also be tantamount to endorsing the notion that a plaintiff must cause himself increased injury to bring a claim.

15

the community, and who faces no risk of future contact,[7] may not have an injury in fact sufficient to confer standing.  This is because standing requires that the plaintiff has a concrete grievance that is particularized to him and that the plaintiff is not one simply expressing generalized disagreement with activities in a place in which he has no connection.  See Valley Forge, 454 U.S. at 482-83; see also Moss v. Spartanburg Cty. Sch. Dist. Seven, 683 F.3d 599, 605 (4th Cir. 2012); Washegesic v. Bloomingdale Pub. Sch., 33 F.3d 679, 683 (6th Cir. 1994) (practices in one's "own community may create a larger psychological wound than someplace we are just passing through"); Saladin, 812 F.2d at 693 (plaintiffs "have more than an abstract interest" where they are "part of [the relevant community] and are directly affronted" by a religious display).

Moreover, an individual objecting to a religious display on government property or religious activity that is government-sponsored need not change her behavior to avoid contact with the display to establish standing.  Suhre, 131 F.3d at 1088 ("In evaluating standing, the Supreme Court has never required that Establishment Clause plaintiffs take affirmative steps to avoid contact with challenged displays or religious exercises.").  Rather, standing exists either when plaintiffs "were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." Valley Forge, 454 U.S. at 486 n.22.  Consistent with

---

[7] The risk of future contact is only relevant to the question of whether there is standing to seek injunctive and declaratory relief, and it does not factor into our analysis of whether there is standing to pursue nominal damages.  See City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).

16

this approach, the Supreme Court has decided religious display cases in which plaintiffs had come into contact with the displays but not altered their conduct, without noting any concern about their standing to sue. See Cty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573 (1989) (challenging a holiday display outside county courthouse); Lynch v. Donnelly, 465 U.S. 668 (1984) (challenging a holiday display in a city's shopping district).

We agree with the view that one should not be required to avoid an unwelcome object or activity to have standing to bring an Establishment Clause claim.[8] See, e.g., Red River, 679 F.3d at 1023; Books, 401 F.3d at 857, 861; Foremaster, 882 F.2d at 1490; Suhre, 131 F.3d at 1088. In the religious display context, the allegedly unwelcome activity generally takes place on government property or at a government-sponsored event. A community member should not be forced to forgo a government service to preserve his or her ability to challenge an allegedly unconstitutional religious display or activity.[9] While altering one's behavior to avoid

---

[8] As the School District points out, the Court of Appeals for the Seventh Circuit suggested in Freedom From Religion Found., Inc. v. Zielke, 845 F.2d 1463 (7th Cir. 1988) and Am. Civil Liberties Union of Ill. v. City of St. Charles, 794 F.2d 265, 268-69 (7th Cir. 1986) that altered conduct was required to bring an establishment clause claim. More recent Seventh Circuit cases, however, have retreated from this view, see Books, 401 F.3d at 857, 861 (noting that other Seventh Circuit cases have found standing without altered conduct).

[9] Similarly, while many cases involve plaintiffs availing themselves of needed government services or

something may demonstrate that the thing avoided is unwelcome, altered conduct is not a prerequisite for obtaining standing in this context.[10]

Thus, a community member like Schaub may establish standing by showing direct, unwelcome contact with the allegedly offending object or event, regardless of whether such contact is infrequent or she does not alter her behavior to avoid it.[11]

---

fulfilling civic obligations, see, e.g., Cooper, 577 F.3d at 490; Books, 401 F.3d at 861; Doe, 41 F.3d at 1161, there is no requirement that a plaintiff do so, or that her contact with the display be unavoidable. Furthermore, attending events at a public school, whether or not one is a student, is plainly an interest that can give rise to the requisite injury for standing purposes. See Washegesic, 33 F.3d at 682 (religious painting hung at a public school did "not affect students only" but rather, "a member of the public would have standing if she attended events in the gymnasium"); Jager v. Douglas Cty. Sch. Dist., 862 F.2d 824, 826 n.1 (11th Cir. 1989) (former student and his father had standing to challenge prayer at football games "as people who attend the football games").

[10] See, e.g., Moss, 683 F.3d at 606-07 (discussing plaintiffs' change of conduct as one of several reasons they demonstrated sufficient injury); Cooper, 577 F.3d at 490 (noting that that "the discomfort [the plaintiff] suffered when he viewed the religious displays . . . was so great that he was inclined to drive to another postal unit" as one reason that his injury was of sufficient seriousness).

[11] A parent sending his or her child to a public school in the community also has standing to complain about present and future religious displays or activities at the child's school.

C

A plaintiff seeking relief must show he or she has standing for each remedy sought. Laidlaw, 528 U.S. at 184. Thus, we first examine Schaub and Doe 1's standing to secure nominal damages for injury from past direct, unwelcome contact with the monument. Schaub has cited three specific occasions on which she viewed, and hence had direct contact with, the monument. Whether Schaub read the monument

Lee v. Weisman, 505 U.S. 577, 584 (1992) (the father of a high school freshman had Article III standing to challenge the inclusion of a prayer during his daughter's anticipated high school graduation ceremony years later); Sch. Dist. of Abington Twp. v. Schempp, 374 U.S. 203, 224 n.9 (1963) (both children and their parents had standing to challenge bible reading in their public school); see also Valley Forge, 454 U.S. at 486 n.22 (characterizing Schempp as supporting standing "because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them"); Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 217 n.2 (3d Cir. 2003) ("We do note that parents independently have standing to bring constitutional challenges to the conditions in their children's schools."); Brody ex rel. Sugzdinis v. Spang, 957 F.2d 1108, 1114 (3d Cir. 1992) ("parents independently have standing to bring constitutional challenges to the conditions in their children's schools"); Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cty., 766 F.2d 1391, 1398 (10th Cir. 1985) (agreeing with district court that parents may "on their own behalf, assert that the state is unconstitutionally acting to establish a religious preference affecting their children" (internal quotation marks omitted)).

each time she saw it, or ever fully read its text, is immaterial since it is the monument's overall representation of the Ten Commandments to which Schaub objects, as she sees it as conveying a religious message. See Saladin, 812 F.2d at 691-92 (holding that rendering the term "Christianity" as part of a city seal, to be illegible did not prevent residents who knew what it signified from being reminded of it "every time they [were] confronted with" it). Schaub's allegations that the monument "signals that [she is] an outsider because [she] do[es] not follow the particular religion or god that the monument endorses," App. 679, and that her "stomach turned" when she encountered it,[12] App. 824, are sufficient to demonstrate that her contact with the monument was unwelcome. Thus, Schaub has standing to pursue a nominal damages claim.

Doe 1, on the other hand, explicitly stated that she did not understand the monument when she encountered it prior to the lawsuit because she was too young, "never read it or paid attention to it," and never told anyone that it bothered her. App. 684. In fact, it is not clear from the record that Doe 1 read or understood the monument until after the suit was filed. See Wall, 246 F.3d at 266 (concluding that plaintiffs lacked standing because they failed to describe their reaction to a religious display and because it was "unclear whether" one plaintiff observed it "in order to describe [it] for this litigation" or while going about ordinary business). As to

---

[12] "[W]hile those injuries are largely emotional, we must presume they are sincerely felt." Red River, 679 F.3d at 1024 (noting that there is no basis under Article III's case-or-controversy requirement for treating intangible emotional harms differently from more readily quantifiable harms).

20

Doe 1's comment that she later viewed the monument as conveying that the school wanted students to subscribe to religious beliefs, the record does not show that she had that view at the time the complaint was filed. Thus, we cannot say the District Court erred in concluding that Doe 1 lacks standing.

D

We next examine whether Schaub and Doe 1 have standing to pursue prospective injunctive relief. At the time the complaint was filed, Schaub believed that Doe 1 would matriculate at the high school and come into daily contact with the monument. While the record does not establish that Doe 1 herself dreaded contact with the monument, she asserted that her mother, Schaub, planned to drive her to school, and thus would have contact with the monument. Moreover, as Doe 1's parent, she has an interest in guiding her child's religious upbringing and has standing to challenge actions that seek to "establish a religious preference affecting" her child. Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cty., 766 F.2d 1391, 1398 (10th Cir. 1985) (internal quotation marks and citation omitted). Thus, Schaub has standing to seek injunctive relief.

Schaub's decision not to send Doe 1 to the high school does not deprive Schaub of standing to seek injunctive relief. First, injunctive relief still has the capacity to redress her grievances because Doe 1 could return to the high school if the monument were removed.[13] Schaub therefore has a

_____

[13] Schaub also alleges that Doe 1 has expressed an interest in attending classes at the Northern Westmoreland

concrete interest in the resolution of her request for injunctive relief. Second, the "principles of standing [do not] require [a] plaintiff[ ] to remain in a hostile environment to enforce [her] constitutional rights." Id. at 1399 (no bar to injunctive relief where parents who sought to end various religious practices at a school chose to move their children to another school during the pendency of the lawsuit). For these reasons, Schaub has standing to pursue injunctive relief.[14]

The decision to remove Doe 1 from the high school does not render Schaub's claim for injunctive relief moot. As previously stated, Schaub was not required to continue suffering the exact injury described in the complaint to maintain her entitlement to seek relief. See Chong, 264 F.3d at 384; Cantrell, 241 F.3d at 678. While there may be cases in which an injunction would be ineffective because the injurious conduct has ceased, here Schaub represents that she intends to enroll Doe 1 at the high school if the monument is removed and that Doe 1 wishes to take courses at the adjoining career center, demonstrating that an injunction, if

Career & Technology Center, which is located on the high school campus, but that Schaub is concerned doing so would bring Doe 1 in contact with the monument.

[14] Since we have concluded Schaub has standing to seek equitable relief, we need not address the standing of the other plaintiffs to pursue injunctive relief. Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls, 536 U.S. 822, 826 n.1 (2002) (explaining that because one party has standing, it is unnecessary to address whether the other party also has standing to challenge the school's suspicionless drug testing policy).

granted, could provide relief. Thus, the request for an injunction is not moot.

E

Finally, we address FFRF's standing. FFRF's standing is predicated wholly on the standing of its alleged member, Schaub. Because we conclude Schaub has standing, we will remand to the District Court to determine whether she was a member of FFRF at the time the complaint was filed and if FFRF thereby has organizational standing to pursue either injunctive relief or nominal damages.

III

For the foregoing reasons, we will affirm the District Court's grant of summary judgment with respect to Doe 1's claims for nominal damages, reverse and remand for further proceedings concerning Schaub's claims, and vacate and remand for consideration of FFRF's standing and further proceedings concerning FFRF's claims if the District Court finds FFRF has standing.[15]

---

[15] The standing inquiry is not an assessment of the merits, see ASARCO Inc. v. Kadish, 490 U.S. 605, 624 (1989), and therefore nothing herein constitutes an opinion on the merits.

*Freedom From Religion Foundation, Inc. v. New Kensington Arnold School District*, No. 15-3083

SMITH, *Circuit Judge*, concurring dubitante.

I join in the excellent opinion authored by Judge Shwartz. I write separately only because I am doubtful that a claim for nominal damages alone suffices to create standing to seek backward-looking relief. While this issue has little practical importance to this case, it does have broad consequences for our standing and mootness inquiries in other scenarios. Furthermore, this appears to be the first time our Court has ruled on this issue.

Because this is a case about standing, I begin my discussion with the standing doctrine. Then, because the doctrines of standing and mootness are closely related, and because there are many more cases discussing the interplay between nominal damages and mootness than there are between that of nominal damages and standing, I next discuss the mootness doctrine and the persuasiveness of these cases. After revisiting the facts of our case, I consider a few hypothetical scenarios that will be impacted by our standing decision today. Finally, I conclude by emphasizing that nothing in this opinion casts doubt on the availability of nominal damages at the conclusion of a suit. I only write to express skepticism that a claim for nominal damages alone would suffice to create standing or save a case from mootness.

**I.**

That "a plaintiff must demonstrate standing separately for each form of relief sought" is an unremarkable proposition. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). My uncertainty stems from the third requirement of standing: redressability. As the panel opinion points out, in order to satisfy Article III standing, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 180-81. Outside of quoting this test, the panel opinion discusses only whether there exists an adequate injury in fact, as that is the only prong of the standing inquiry that the parties themselves discuss. Yet of course, we have an independent obligation to determine whether we have jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

In order for an injury to be redressable, a plaintiff must show that she "personally would benefit in a tangible way from the court's intervention." *Warth v. Selden*, 422 U.S. 490, 508 (1975). *Steel Co.* is the only Supreme Court decision to focus on the redressability prong of standing. In that case, the plaintiff alleged that it suffered an injury – namely, that its members' "safety, health, recreational, economic, aesthetic and environmental interests" were negatively impacted – due to the defendant's failure to file timely and required reports pursuant to federal statute. 523 U.S. at 105. Assuming that this was sufficient for an injury in

2

fact, the Supreme Court walked through each of the six forms of relief sought by the plaintiff and determined that the organization lacked standing because none of these forms of relief redressed this injury. *Id.* at 105-09.

First, the plaintiff sought a declaratory judgment that there was a violation of the federal statute, which was "disposed of summarily" as there was no dispute that there was, in fact, a violation of the statute.[1] *Id.* at 106. Second, the plaintiff stated that civil penalties, payable to the United States Treasury, would redress the injury because the payment would provide "vindication of the rule of law," even if it would not provide "reimbursement for the costs incurred as a result of the late filing." *Id.* The Court rejected this argument because, "although a suiter may derive great comfort and joy from the fact that the United States Treasury is not cheated . . . psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Id.* at 107. Next, the Court concluded that "investigation and prosecution costs," which were authorized by statute, could not create standing when it was otherwise absent, because "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit." *Id.* at 107. Finally, the Court concluded that the

---

[1] While the Supreme Court had no need to delve further into the declaratory relief sought, it stated in *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010), that a declaratory judgment is a claim for prospective relief, different from a claim alleging past harm.

3

remaining two forms of relief sought[2] – giving the plaintiff the authority to inspect the defendant's records and facility and requiring defendant to give the plaintiff copies of compliance reports – were injunctive in nature. *Id.* at 108. Such injunctive relief "cannot conceivably remedy any past wrong but is aimed at deterring petitioner from violating [the federal statute] in the future." *Id.* Thus, if the complaint "had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm." *Id.* However, such a "generalized interest in deterrence" did nothing to remedy the past harm that had occurred. *Id.*

In holding that the redressability prong of standing was not satisfied, the Court stated, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Id.* at 107. Thus, even though the plaintiffs sought several forms of relief that might allow a suitor to "derive great comfort and joy" or declare that there was, in fact, a violation of the law, *id.*, because none of the forms of relief sought would serve to compensate plaintiffs for their past losses, Article III standing was lacking. *Id.* at 109-10.

The question of whether nominal damages, standing alone, serve to confer standing on a plaintiff has never been addressed by this Court, and, with one exception, it does not appear to have been addressed by our sister circuits. However, the principle appears to be the same as that in *Steel*

[2] The sixth form of relief sought was "any such further relief as the court deems appropriate." *Id.* at 105.

4

*Co.*: just as the "psychic satisfaction" from being told that you were right or by seeing a wrongdoer pay monies to the Treasury does not redress past harm, nominal damages do not serve to redress past injury. "Nominal damages are damages in name only, trivial sums such as six cents or $1." *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1264 (10th Cir. 2004) (McConnell, J., concurring) (quoting 1 Dan B. Dobbs, *Dobbs Law of Remedies*, § 3.3(2), at 294 (2d ed. 1993)). If a plaintiff were seeking to be compensated for past harms, he would seek compensatory damages.

There have been three appellate courts that have explicitly addressed whether a claim for nominal damages alone would suffice for standing purposes. First, the Second Circuit, in *Kerrigan v. Boucher*, held that a "claim for nominal damages, which is clearly incidental to the relief sought, cannot properly be the basis upon which a court should find a case or controversy where none in fact exists." 450 F.2d 487, 489-90 (2d Cir. 1971). This holding was reaffirmed two years later in the two-judge concurrence in *Hernandez v. European Auto Collision, Inc.*, 487 F.2d 378, 387 (2d Cir. 1973) (Timbers, J., concurring) (quoting *Kerrigan*, 450 F.2d at 489-90). However, both of these cases appear to have been largely overlooked, with neither having been cited with great frequency.

Next, the Eighth Circuit, in what I consider to be a fairly conclusory manner, held that a claim for nominal damages meant that the redressability requirement was satisfied. *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 802 (8th Cir. 2006). The one case that it relied on for support of this proposition, *Tandy v. City of Wichita*,

5

stated that standing was satisfied because "*compensatory or nominal damages can redress* [the plaintiff's] injury in fact." 380 F.3d 1277, 1290 (10th Cir. 2004) (emphasis added). While *Tandy* does suggest that nominal damages alone would redress an injury in fact, the Tenth Circuit did not have to address this issue due to the presence of a claim for compensatory damages.[3]

In the only case where an appellate court has thoroughly analyzed the relationship between nominal damages and redressability, the Sixth Circuit in *Morrison v. Board of Education of Boyd County*, stated that "[n]o readily apparent theory emerges as to how nominal damages might redress past [harm]."[4] 521 F.3d 602, 610 (6th Cir. 2008). Thus, where the plaintiff sought "nominal damages based on a regime no longer in existence," the redressability prong of standing was not satisfied because "[t]o confer nominal

---

[3] The Fourth Circuit, in *Covenant Media of SC, LLC v. City of North Charleston*, similarly suggested that a claim for nominal damages would suffice for standing purposes. 493 F.3d 421, 428 (4th Cir. 2007) (noting that the claim is "redressable at least by nominal damages"). However, like many of the cases that seem to say that a case is saved from mootness *at least* by nominal damages, the plaintiffs sought both compensatory and nominal damages. *See id.* at 429 n.4.

[4] As discussed further below, the *Morrison* court relied heavily upon then-Judge McConnell's views in *Utah Animal Rights Coalition*, which addressed the related question of whether a claim for nominal damages prevents a case from becoming moot.

damages here would have *no* effect on the parties' legal rights." *Id.* at 611. Instead, the entire purpose of the suit, a challenge to a school district policy that was no longer in effect, *id.* at 606-07, was to seek prospective relief, a fact that the plaintiff's attorney conceded at oral argument, *id.* at 610 (noting that counsel acknowledged that "nominal damages are a vehicle for a declaratory judgment"). Allowing the suit to proceed to determine "the constitutionality of an abandoned policy—in the hope of awarding the plaintiff a single dollar—vindicates no interest and trivializes the important business of the federal courts." *Id.* at 611;[5] *see also Steel Co.*, 523 U.S. at 107 (noting that "[b]y the mere bringing of his suit, *every* plaintiff demonstrates his belief that a favorable judgment will make him happier," but that this "psychic satisfaction" does not redress an Article III injury).

Here Schaub does not seek compensatory damages, but instead seeks only nominal damages, where "the dollar is not the real objective of the litigation." *Utah Animal Rights*

---

[5] In ruling that nominal damages alone did not suffice for standing purposes, *Morrison* did not find itself constrained by the Sixth Circuit's prior precedent "allow[ing] a nominal-damages claim to go forward in an otherwise-moot case." *Morrison*, 521 F.3d at 611 (citing *Lynch v. Leis*, 382 F.3d 642, 646 n.2 (6th Cir. 2004), and *Murray v. Bd. of Trs., Univ. of Louisville*, 659 F.2d 77, 79 (6th Cir. 1981)). However, as discussed at the beginning of Part II, while these doctrines are closely related, the mootness doctrine is more flexible due in part to the "sunk costs" of litigation already conducted. *See Laidlaw*, 528 U.S. at 190-92.

*Coal.*, 371 F.3d at 1264 (McConnell, J., concurring).[6]  As with the request for civil penalties to be paid to the United States Treasury in *Steel Co.*, Schaub seems to be seeking a remedy that does not provide her with any tangible benefit. Instead, she appears to be seeking an "authoritative judicial determination of the parties' legal rights," *Id.*  That is prospective relief, not something that nominal damages can redress. *Morrison*, 521 F.3d at 610-11.

Standing alone, with the claims for injunctive and declaratory relief analyzed separately, I am doubtful that this "psychic satisfaction [can be] an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co.*, 523 U.S. at 107; *see also N.J. Peace Action v. Bush*, 379 F. App'x 217, 222 (3d Cir. 2010) (saying that a remedy of declaratory relief "would not take back the allegedly unlawful orders that [plaintiff] has already obeyed, nor would it provide any concrete compensation for the

---

[6] In their opening brief, Plaintiffs claim that they are entitled to nominal damages to compensate them for "the altered conduct they undertook to avoid the Monument," not for their unwelcome contact with the monument in the past.  Appellant Br. at 41.  This injury which they seek to be redressed by nominal damages was not present at the time the suit was filed, as Doe 1 was transferred to a different school district after the commencement of the suit, and thus would not suffice to create standing. *Laidlaw*, 528 U.S. at 191 (stating that a plaintiff must have standing "at the time the action commences").  Moreover, it is compensatory in nature.  However, in their reply brief, Plaintiffs change their argument to one based on their past interaction with the monument.  This is the standing analysis that the panel opinion correctly focuses upon.

8

emotional, psychological, and physical injuries that he has allegedly suffered. Indeed, it is 'merely speculative' that any psychic benefits of declaratory relief would redress the emotional, physical, and psychological injuries already suffered by the plaintiffs in this case." (internal quotation marks omitted)). If this nominal damages claim is really one for prospective relief, then this analysis has already been conducted in the panel opinion. *See Kerrigan*, 450 F.2d at 489-90 (stating that the claim for nominal damages "is clearly incidental to the [declaratory] relief sought [and] cannot properly be the basis upon which a court should find a case or controversy"). While not problematic in this case, I would be concerned if our retrospective standing analysis were considered binding on future panels of our Court in factually different cases, hypotheticals of which are discussed in Part III of this opinion.

## II.

Plaintiffs first raised the issue of whether nominal damages alone suffice for justiciability purposes in order to save the case from mootness if the District Court determined that the claims for injunctive and declaratory relief were mooted by Doe 1's transfer to a different school district. While we are not faced with the specific question of whether a claim for nominal damages could save a case from mootness, it is closely related to the issue that I raise, as the Supreme Court has said that "the doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Laidlaw*, 528 U.S. at

9

189 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). However, *Laidlaw* also explained that this phraseology was not entirely accurate, as there is an important distinction between standing and mootness. *Id.* at 190 (describing this phrase as a "not comprehensive" description of the relationship between standing and mootness). The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake," while the mootness doctrine involves a "case [that] has been brought and litigated, often . . . for years." *Id.* at 191-92. While this sunk cost argument "does not license courts to retain jurisdiction over cases in which one or both of the parties *plainly* lack a continuing interest," this is "surely . . . an important difference between the two doctrines." *Id.* at 192 (emphasis added); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 118 (3d Cir. 2001) (describing the "flexible character of the Article III mootness doctrine" (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980))). Thus, while the cases involving nominal damages and mootness may be instructive, they do not necessarily dictate what our analysis should be regarding the sufficiency of nominal damages alone to create standing.

Unlike cases addressing the interplay between nominal damages and redressability, there are many cases that have addressed whether a claim for nominal damages saves a case from mootness. I concede that my concerns about nominal damages and justiciability do not appear to be shared by the majority of appellate courts to address the mootness subset of justiciability. However, the one case that has thoroughly

10

examined the issue expresses the same concerns that I raise here. As with the standing inquiry discussed in Part I, we do not have a Third Circuit case directly on point, although we have held that a claim for nominal damages in conjunction with one for punitive damages is enough to avoid mootness. *Doe v. Delie*, 257 F.3d 309, 314 n.3 (3d Cir. 2001).

Nor has the Supreme Court explicitly addressed this issue. *Arizonans for Official English* is its one decision touching on the relationship between justiciability and nominal damages. 520 U.S. at 68-70. In that case, the Court stated that the plaintiff's attempt to wrest a claim for nominal damages from a general prayer for relief would not save a case from becoming moot. *Id.* at 69-72. It said that such attempts to save a case from becoming moot by asserting what it characterized as the "nominal damages solution to mootness" required, at a minimum, close scrutiny. *Id.* at 69 & n.24; *id.* at 69 ("It should have been clear to the Court of Appeals that a claim for nominal damages, extracted late in the day from [the plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection."). However, the Court had no reason to either embrace or repudiate whether a valid claim for nominal damages could save a case from mootness, because the party against whom nominal damages were sought – the state – was not a party to the litigation and was also immune to damages claims under 42 U.S.C. § 1983. *Id.* at 69-70. At the same time, it did not explicitly hold that there was no "nominal damages solution to mootness." *See id.* at 69 n.24.

It may be that a majority of our sister circuits have conflated nominal damages with actual damages in holding

11

that "[a] live claim for nominal damages will prevent dismissal for mootness." *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002); *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001) (stating in dicta that "plaintiffs in election cases could avoid the potential for mootness by simply expressly pleading that should the election pass before the issuance of injunctive relief, nominal money damages are requested.");[7] *Advantage Media,* 456 F.3d at 803 (holding that a claim was not moot because the plaintiff "might be entitled to nominal damages if it could show that it was subjected to unconstitutional procedures"). For example, in *Bernhardt*, the court examined caselaw making clear that nominal damages *could* be awarded in the event that compensatory or punitive damages were unavailable. 279 F.3d at 872. As discussed further below, this is a different question from whether nominal damages *standing alone* suffice for standing purposes. Despite acknowledging that "this rule [that standing can save a claim from mootness] has been challenged as 'inconsistent with fundamental principles of justiciability,'" *Morgan v. Plano*

---

[7] However, this dicta is at odds with the Second Circuit's case law on nominal damages and standing. *See Hernandez*, 487 F.2d at 387 ("Not having found a justiciable controversy permitting a declaration, the claim for nominal damages, which is clearly incidental to the relief sought, cannot properly be the basis upon which a court should find a case or controversy where none in fact exists." (quoting *Kerrigan*, 450 F.2d at 489-90)). As mentioned earlier, the standing requirement is slightly more rigorous than the mootness doctrine's greater flexibility, which may explain the difference. *See Laidlaw*, 528 U.S. at 190-92; *cf.*, *supra* note 5.

12

*Indep. Sch. Dist.*, 589 F.3d 740, 748 n.32 (5th Cir. 2009) (quoting *Utah Animal Rights Coal.*, 371 F.3d at 1263 (McConnell, J., concurring)), some courts nonetheless are bound by their prior precedent. *Id.* at 748 ("This court and others have consistently held that a claim for nominal damages avoids mootness."); *Utah Animal Rights Coal.*, 371 F.3d at 1262 (McConnell, J., concurring ("The panel was constrained to take jurisdiction in this case because of Tenth Circuit precedent holding that a claim for nominal damages precludes dismissal of the case on mootness grounds."). Most circuits that have held that nominal damages can prevent mootness reach the result with what I consider to be little analysis of how a claim for nominal damages would redress a cognizable injury in fact. It is just possible that "the nominal damages solution to mootness" is nothing more than a self-perpetuating myth.[8]

The Eleventh Circuit draws a distinction between claims for procedural due process, where a claim for nominal

---

[8] While the Fourth and Seventh Circuit have not explicitly addressed the issue, they have hinted that a claim for nominal damages alone would prevent a case from becoming moot. *See Covenant Media*, 493 F.3d at 429 n.4 (noting that the plaintiff's "suit [was] not moot because if [the plaintiff was] correct on the merits, it is entitled to *at least* nominal damages," because the suit sought compensatory and nominal damages (emphasis added)); *Kelly v. Mun. Courts of Marion Cty., Ind.*, 97 F.3d 902, 910 (7th Cir. 1996) (holding a claim moot because the plaintiff "failed to mention damages, not even nominal damages"). The First, Federal, and D.C. Circuits do not seem to have indicated their inclination on the subject one way or another.

13

damages will save a claim from mootness, and other cases, where the case will be moot despite the presence of nominal damages. In *DA Mortgage, Inc. v. City of Miami Beach*, the court held that "[d]amages claims can save a § 1983 claim from mootness, but only where such claims allege compensatory damages or nominal damages for violations of procedural due process." 486 F.3d 1254, 1259 (11th Cir. 2007). It draws this distinction based on the Supreme Court's decisions in *Memphis Community School District v. Stachura*, 477 U.S. 299, 310 (1986) (noting that the basic purpose of damages under § 1983 is compensatory and that "the abstract value of a constitutional right may not form the basis for § 1983 damages"), and *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (approving the award of nominal damages for a violation of procedural due process when actual damages could not be proved). In an unpublished opinion, the Eleventh Circuit reaffirmed its holding that a claim for nominal damages saved a case from mootness only when there was a violation of procedural due process. *Freedom from Religion Found., Inc. v. Orange Cty. Sch. Bd.*, 610 F. App'x 844, 846 n.3 (11th Cir. 2015). While this distinction is one that we could adopt, I am not convinced that the distinction between procedural due process and other violations is an appropriate one for justiciability purposes. Moreover, as discussed further in Part IV, *Carey* was not a case about justiciability and was more about the availability of nominal damages where other damages claims were ultimately not susceptible to proof.

As the Fifth Circuit acknowledged in *Morgan*, the first case to challenge the well-accepted view that nominal

14

damages could save a case from mootness was *Utah Animal Rights Coalition.* In this case, the plaintiffs sought injunctive relief, declaratory relief, and nominal damages in an attempt to force the city to process their applications to protest the Winter Olympics. 371 F.3d at 1254 (majority). However, before the District Court heard argument, the Winter Olympics occurred, rendering the claims for injunctive and declaratory relief moot. Then-Judge McConnell[9] wrote both a majority opinion and a concurrence because he felt "constrained" by Tenth Circuit precedent, which bound the court to hold "that a claim for nominal damages precludes dismissal of the case on mootness grounds." 371 F.3d at 1262 (McConnell, J., concurring). Judge McConnell concurred so that he could explain why he felt that Tenth Circuit precedent was incorrect, and to urge "either an *en banc* court or the Supreme Court [to] hold that a case that is otherwise nonjusticiable on account of mootness is not saved by the mere presence of a prayer for nominal damages." *Id.* at 1263.

I consider Judge McConnell's concurrence persuasive. He argues that "nominal damages were originally sought as a means of obtaining declaratory relief before passage of declaratory judgment statutes." *Id.* at 1265. He cites to extensive scholarship in support of this view. *Id.* (citing Douglas Laycock, *Modern American Remedies: Cases and Materials* 561 (3d ed. 2002) ("The most obvious purpose [of nominal damages] was to obtain a form of declaratory relief

---

[9] On May 5, 2009, Judge McConnell resigned his seat on the Court of Appeals for the Tenth Circuit in order to serve as the faculty director of the Stanford Law School's Constitutional Law Center.

15

in a legal system with no general declaratory judgment act."), 1 Dobbs, *supra*, at 295 ("Lawyers might have asserted a claim for nominal damages to get the issue before the court in the days before declaratory judgments were recognized."), and 13A Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3533.3, at 266 (2d ed. 1984)).  In fact, that is the only reason that nominal damages were asserted in our case: even if the claims for injunctive and declaratory relief were technically moot, a holding that there had been a past Establishment Clause violation – and that Schaub would be entitled to nominal damages – would have the practical effect of requiring the school district to take down the Ten Commandments monument.  Schaub is not seeking to be compensated for a past constitutional violation; her sole objective is to prevent the alleged constitutional violation from continuing.  *See Morrison*, 521 F.3d at 610 ("No readily apparent theory emerges as to how nominal damages might redress past [harm].").

Instead of allowing such a claim to proceed in federal court, if we agreed with the District Court that the claims for injunctive and declaratory relief were moot, a proper result would be to hold that the claim is non-justiciable.  *Utah Animal Rights Coal.*, 371 F.3d at 1262 (McConnell, J., concurring) ("Federal Courts . . . are not debating societies to determine whether past actions and defunct ordinances were constitutional.  Federal courts exist to resolve live controversies, to remedy wrongs, and to provide prospective relief.").  As in our case, plaintiffs in *Utah Animal Rights Coalition* did not seek compensatory relief.  Thus, Judge McConnell would say that there is "no retrospective relief

16

[the court] could grant that might make them whole for the alleged constitutional violation," and thus there would be "no point in deciding whether the former ordinance was unconstitutional on its face." *Id.*; *see also id.* at 1263 (stating that a case is not justiciable merely because "a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong"). As Judge McConnell noted, to hold otherwise would allow litigants to avoid mootness of claims for injunctive relief by simply "appending a claim for nominal damages" to the complaint. *Id.* at 1266; *see Van Wie*, 267 F.3d at 115 n.4 ("[P]laintiffs in election cases could avoid the potential for mootness by simply expressly pleading that should the election pass before the issuance of injunctive relief, nominal damages are requested.").

Judge McConnell's separate opinion on mootness in *Utah Animal Rights Coalition* served as the analytical underpinning behind the Sixth Circuit's standing analysis in *Morrison*. I also find this persuasive, while at the same time acknowledging the weight of precedent from other circuits that support the prevailing view.

## III.

None of the cases cited in our opinion addresses a claim for nominal damages, so none had a need to engage in the inquiry into past harm that the panel does. In fact, in this case, Plaintiffs on appeal originally based their claim for nominal damages on "the altered conduct they undertook to avoid the Monument," not on their unwelcome contact with the monument in the past. Appellant Br. at 41. There is a

17

simple explanation for that: the real remedy sought at the time the complaint was filed was the removal of the Establishment Clause violation and a declaration of its unconstitutionality, not the $1 in nominal damages. The difficulty in concluding that a request for nominal damages suffices to confer standing for past harm is apparent when we consider this case with different facts.

Imagine a scenario in which the school district immediately took down the monument after Schaub complained of it. Nonetheless, she still sued for nominal damages. Would we say that she has standing to sue to remove this monument? Following the analysis conducted in the panel opinion, it seems that we would have to conclude that, due to Schaub's past interactions with the monument, she would have standing because nominal damages serve to remedy a past harm. Thus, the federal courts would need to adjudicate the merits of this alleged Establishment Clause violation. I am doubtful that this is the case because I do not see how nominal damages redress any past harm outside of the psychic satisfaction of the plaintiff being told that she was right. *Steel Co.*, 523 U.S. at 107 (holding that a remedy does not redress an injury merely because it allows the suitor to "derive great comfort and joy"); *Morrison*, 521 F.3d at 611 ("To confer nominal damages here would have *no* effect on the parties legal rights."); *Utah Animal Rights Coal.*, 371 F.3d at 1263 (McConnell, J., concurring) ("It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong.").

Similarly, and more comparable to *Utah Animal Rights Coalition*, what if we agreed with the District Court that

18

Plaintiffs' claim for injunctive relief *was* moot? This appears to be the only reason why Plaintiffs raise the argument that nominal damages would nonetheless preserve their claim, as they never argued that they had standing separate from their claim for injunctive relief in the District Court. Would we instruct the District Court to rule on the Establishment Clause claim because of the presence of nominal damages? I seriously question whether a "case or controversy" would remain. *Id.* at 1270 ("If a claim for nominal damages cannot become moot, and is eligible for fees under § 1988 . . . plaintiffs may be induced to waste legal and judicial resources by continuing litigation when there is no longer any point to it."). While neither scenario is before us, they are not outside the realm of possibility.[10] Indeed, they are similar to the

---

[10] In fact, in another case in the Western District of Pennsylvania, the court recognized that this was an issue of first impression for our circuit. It held that a "valid claim for nominal damages" was enough to avoid mootness even though it "seems 'odd that a complaint for nominal damages could satisfy Article III's case or controversy requirements.'" *Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist.*, 127 F. Supp. 3d 283, 300 (W.D. Pa. 2015) (quoting *Utah Animal Rights Coal..*, 371 F.3d at 1257 (majority opinion)). On the other hand, a court in the Southern District of Indiana recently held that "a claim for nominal damages alone is not sufficient enough to maintain federal court jurisdiction in a case that is otherwise moot." *Freedom from Religion Found., Inc. v. Franklin Cty., Ind.*, 133 F. Supp. 3d 1154, 1160 (S.D. Ind. 2015); *see also id.* ("By allowing FFRF to proceed to determine the

19

facts of *Morrison* and *Utah Animal Rights Coalition*. I am concerned that the panel opinion's analysis will control in similar cases.

## IV.

My doubts about the panel opinion's separate standing analysis of nominal damages does not question the uncontroversial point that a plaintiff may receive only an award of nominal damages for past harm. That is a common occurrence when the finder of fact agrees with a plaintiff that her right was violated but the plaintiff has failed to show actual damage. *See, e.g., Carey*, 435 U.S. at 266 (holding that nominal damages would be an appropriate remedy for a procedural due process violation even if the district court ultimately concluded that compensatory damages were inappropriate due to the lack of actual harm); *Utah Animal Rights Coal.*, 371 F.3d at 1264 n.2 ("In some cases, the plaintiff may seek compensatory damages at the outset of trial, but the court may award nominal damages based on the conclusion that the defendant violated the plaintiff's right but the plaintiff could not prove actual damage."). In fact, the Supreme Court has held that a plaintiff who wins only an award of nominal damages may be entitled to "prevailing party status" for the purposes of seeking attorneys' fees under 42 U.S.C. § 1988. *Farrar v. Hobby*, 506 U.S. 103, 116 (1992) (O'Connor, J., providing the fifth vote concurring in judgment). At the same time, Justice O'Connor said that

constitutionality of a policy that has been voluntarily amended to cease illegal conduct, in hope of receiving $1.00, vindicates no rights and is not a task of the federal courts.").

20

where "the plaintiff's success is purely technical or *de minimis*, no fees can be awarded. Such a plaintiff either has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero." *Id.* at 117. She acknowledged that sometimes nominal damages can represent a victory when they vindicate certain rights; but in *Farrar*, where the plaintiff won an award of $1 out of $17 million sought, and only from the least culpable of six defendants, this was not such a victory even though he had prevailed in showing a constitutional violation. *Id.* at 120-21. Neither *Farrar* nor *Carey* addressed a claim for nominal damages alone, without accompanying claims for compensatory relief.

Thus, if Schaub had sought compensatory damages here for any past harm, then we would have to conduct a backwards-looking standing inquiry. She ultimately may not have been entitled to compensatory damages, and only recovered an award of nominal damages – like the plaintiff in *Farrar* – but that would not be a bar to finding standing.

Plaintiffs obviously did not seek such compensatory damages at the time their suit was filed because they had not yet made the decision to move Doe 1 to another school district. However, we must address standing at the time the suit was filed, when only the claim for nominal damages was sought. *Laidlaw*, 528 U.S. at 190 ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."). Plaintiffs have provided no explanation for how nominal damages would redress *any* past injury present at the time of the filing of the lawsuit.

21

## V.

For the reasons stated herein, I concur dubitante. On the one hand, most courts to address the impact of nominal damages on a court's justiciability analysis have held that a claim for nominal damages preserves a live case or controversy and saves a case from mootness. However, nominal damages do not appear to redress any past injury. I wonder if our decision will create binding precedent in our Court for an issue that I do not think we need to reach. Schaub clearly has standing to seek injunctive and declaratory relief. I question the need to conduct a separate standing analysis for nominal damages. Perhaps when this issue is squarely presented and more fully litigated – such as when a plaintiff brings a claim solely for nominal damages or if we are asked to determine whether a claim for nominal damages saves a case from mootness – this issue will be worthy of en banc consideration by our full Court.