NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2781

NEW JERSEY PEACE ACTION; PAULA ROGOVIN;
ANNA BERLINRUT; WILLIAM JOSEPH WHEELER,
                                        Appellants
                                v.

BARACK H. OBAMA, President of the United States, in his Official Capacity

(Pursuant to F.R.A.P. 43(c))

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-08-cv-02315)
District Judge: Honorable Jose L. Linares

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2010

Before: SCIRICA[*], AMBRO, Circuit Judges, and JONES,[**] District  Judge

(Opinion filed: May 10, 2010)

_____

[*]Judge Scirica completed his term as Chief Judge on May 4, 2010.

[**]The Honorable John E. Jones, III, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

---

OPINION

---

AMBRO, Circuit Judge

This case is a challenge to the constitutionality of American military operations in Iraq. The plaintiffs seek a declaratory judgment that these operations have been waged in violation of the U.S. Constitution. The District Court granted the Government's motion to dismiss for lack of subject matter jurisdiction, concluding that the plaintiffs lacked standing to bring such an action or, in the alternative, that the action itself was prohibited by the political question doctrine. For the reasons that follow, we affirm.

I.

Article I, § 8 of the United States Constitution grants to Congress the power to "declare War," while Article II provides that "[t]he executive Power shall be vested in a President" who "shall be Commander in Chief of the Army and Navy of the United States."

In October 2002, President George W. Bush signed the Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. No. 107-243, 116 Stat. 1498 (2002) (the "Authorization"). In relevant part, the Authorization provided the President with the following authority:

> (a) AUTHORIZATION.—The President is authorized to use the Armed Forces of the United States as he determines to be necessary and appropriate in order to—

2

> (1) defend the national security of the United States against the continuing threat posed by Iraq; and
>
> (2) enforce all relevant United Nations Security Council resolutions regarding Iraq.

Authorization, § 3. In March 2003, the President used his authority under the Authorization to invade Iraq. After the fall of Saddam Hussein's regime, the United States has maintained a military presence in that country at the request of its government. *See, e.g.*, S.C. Res. 1790, U.N. Doc. S/RES/1790 (Dec. 18, 2007) (noting "the request conveyed . . . from the Prime Minister of Iraq to the President of the Council . . . to retain the presence of the multinational force in Iraq").

In May 2008—over five years after the U.S. invasion of Iraq—the plaintiffs brought the current action, which alleges that "President Bush's authorization of an offensive military strike against the nation of Iraq violated Article I, Section 8 of the United States Constitution, which assigns exclusively to Congress the duty to Declare War." App. 49–50. The plaintiffs are a diverse group—including a non-profit membership corporation (New Jersey Peace Action),[1] two mothers of children who have completed multiple tours of duty in Iraq (Paula Rogovin and Anna Berlinrut), and an Iraqi

---

[1] An organization may have "representational" standing where: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). For reasons discussed in Part IV, *infra*, New Jersey Peace Action fails the first prong of the *Hunt* test.

war veteran (William Joseph Wheeler). They assert a variety of injuries, which we consider in turn.

Turning first to New Jersey Peace Action, the organization alleges that the invasion of Iraq "impos[ed] a great 'opportunity cost' upon [it] because its leadership felt compelled to redirect its financial resources and staff to opposition to the war" rather than "other projects," such as "promoting nuclear disarmament, promoting a 'Peace Economy,' opposing 'Star Wars,' and conducting peacemaking education programs in schools." App. 31. It also claims that "its members were injured by being deprived of the opportunity to vote for or against their elected representatives based upon how their representatives voted on the issue of going to war in Iraq" and "being compelled to pay tax dollars for an unconstitutional war that they oppose." App. 31.

Rogovin and Berlinrout allege similar injuries to their rights as voters and taxpayers. In addition, they claim that "[t]he fact that no Declaration of War against Iraq was ever brought to a vote in Congress . . . directly caus[ed] [them] to suffer emotional, physical[,] and psychological injury," based on both their anger at President Bush and the emotional trauma of having their children deployed in a dangerous military conflict. App. 32, 33. Finally, they also allege an injury based on "opportunity costs"—namely, that the allegedly unconstitutional invasion of Iraq led them to devote time and resources opposing the war that they could have spent on other pursuits, including "gardening" and "working on new books." App. 32, 34.

4

Wheeler served in the U.S. Army from May 2001 through January 2004. During this period, he completed a tour of duty in Iraq, which lasted from March 2003 through November 2003. He was honorably discharged from the Army in January 2004, but subject to recall to active duty until May 2009. In the current action, Wheeler first alleges injuries based on the "emotional, psychological[,] and physical [e]ffects arising from the ordeal of combat." App. 35. Second, he claims that he "suffered injury by being compelled to obey orders that were unlawful because they were premised on the President's unconstitutional initiation of the War in Iraq." App. 36. Finally, he alleges future injuries based on a possible recall order to serve in future unconstitutional wars "in Iran or elsewhere." App. 36.

In spite of the diverse injuries alleged, the plaintiffs seek a common form of relief—a declaratory judgment that the "war in Iraq is being waged in violation of Article I, Sec. 8 of the United States Constitution." App. 28.[2] The plaintiffs allege that the Authorization's "principal vice . . . is that it denied the people knowledge of how representatives voted on war, because their representatives never cast a vote clearly and solely on the issue of going to war." App. 45. The plaintiffs also attack the "vagueness" of the Authorization, noting that it "gave the President room to assume unlimited

_____

[2] In particular, the plaintiffs seek an order that "[d]eclare[s] that the President's order of March 2003 to invade the sovereign nation of Iraq, in the absence of a Congressional Declaration of War, violated Article I, Sec. 8 of the United States Constitution and the Due Process Clause of the Fifth Amendment . . . ." App. 51–52.

5

discretion to attack Iraq." App. 45. In short, the plaintiffs argue that the Authorization "cannot be considered a Declaration of War because to do so would be to grant Congress the right to delegate its duty to determine whether or not war should be declared to the President." App. 45–46. In the end, the plaintiffs contend that "[a] decision in favor of [them] in this case will clarify the constitutional issues concerning the current war, and will impact the manner in which future hostilities are considered by Congress and the President." App. 29.

The District Court concluded that the plaintiffs lacked standing to bring this suit and that, in the alternative, the suit was prohibited by the political question doctrine. For the reasons that follow, we affirm.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 2201. We have jurisdiction under 28 U.S.C. § 1291. The question of standing is subject to plenary review. *Goode v. City of Phila.*, 539 F.3d 311, 316 (3d Cir. 2008).

## III.

"[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (internal quotation marks omitted). Federal courts are limited by Article III of the U.S. Constitution to consider only actual "cases or controversies." *See Whitmore v. Arkansas*, 495 U.S. 149,

6

154–55 (1990). The "core" of the "case-or-controversy requirement" is the "triad of injury in fact, causation, and redressability." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).[3] This doctrinal core "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore*, 495 U.S. at 155.

To meet the "injury-in-fact" requirement, a plaintiff must establish "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). To meet the "causation" requirement, a plaintiff must establish "a causal connection between the injury and the conduct complained of." *Id.* Finally, to meet the redressability requirement, a plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted). If a litigant does not meet these requirements, the case must be dismissed for lack of subject matter jurisdiction. *See Steel Co.*, 523 U.S. at 88–89. This is true even when a plaintiff

---

[3] "In addition to the immutable requirements of Article III, 'the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.'" *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (*quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75 (1982)). Two of these requirements are potentially implicated in this case. First, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Second, a court may dismiss a suit for lack of standing "when the asserted harm is a 'generalized grievance' shared in a substantially equal measure by all or a large class of citizens." *Id.*

seeks a declaratory judgment. *See, e.g.*, *St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("A declaratory judgment . . . can issue only when the constitutional standing requirements of a 'case' or 'controversy' are met.").[4]  Importantly, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

IV.

To repeat, the plaintiffs collectively seek a declaratory judgment that President Bush's order to invade Iraq was unconstitutional.  They argue that

> they have standing to seek a Declaratory Judgment because they are among "the People of the United States, [who] in Order to form a more perfect Union" established a constitution that imposed explicit procedural requirements that must be followed[,] . . . and they have suffered injuries because of President Bush's violation of those requirements.

Appellants' Br. 45 (*quoting* U.S. Const. pmbl.).  Even were we to assume that the plaintiffs are able to satisfy the "injury-in-fact" and "causation" requirements, we conclude that their proposed declaration would not redress their alleged injuries.[5]  Therefore, we hold that they lack standing to bring the current action.

On appeal, the plaintiffs stress that they are not "seeking relief in the form of

---

[4] In the context of a declaratory judgment, the "case or controversy" requirement may be satisfied when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (internal quotation marks omitted).

[5] Since we conclude that none of the plaintiffs has standing, we need not address the District Court's application of the political question doctrine to this action.

damages," but instead "are merely seeking a declaratory judgment, which . . . will be sufficient to provide them with at least some remedy for the harm they have suffered." Reply Br. 18. In particular, the plaintiffs argue that "[t]he Declaratory Judgment sought herein would likely prevent a recurrence of the challenged presidential conduct," as well as remedy their individual injuries by "vindicating the Fundamental Constitutional Right that they claim." Appellants' Br. 49. They allege that such relief would "provide great redress [to them]," *id.* at 51, by "effectively acting as a formal apology," Reply Br. 23.

Nevertheless, the plaintiffs' proposed relief would not give them a fresh opportunity to cast (more) informed votes for their representatives, pay them back for tax dollars expended, or allow them to reallocate time already spent opposing military operations in Iraq. It would not take back the allegedly unlawful orders that Wheeler has already obeyed, nor would it provide any concrete compensation for the emotional, psychological, and physical injuries that he has allegedly suffered.[6] Indeed, it is "merely speculative" that any psychic benefits of declaratory relief would redress the "emotional, physical[,] and psychological injur[ies]" already suffered by the plaintiffs in this case. Finally, even if we were to grant the proposed declaratory relief, it is unclear that it would have any practical effect on the actions of the President and Congress in the face of any future (as yet unspecified) military conflict.

In the end, the plaintiffs filed this action more than five years after the American

---

[6] Wheeler himself is no longer subject to recall into military service. *See* App. 34.

invasion of Iraq.  As the Government notes, our current commitments in that country are "at the request of [its] Government . . . —a fact that plaintiffs do not dispute."  Appellee's Br. 5.  Therefore, even assuming the truth of the plaintiffs' allegations, the "illegal" war itself has effectively ended.  President George W. Bush is no longer President, and his party was defeated at the polls in 2008.  Furthermore, the plaintiffs stress that their "Complaint seeks no coercive relief against the President and does not ask the court to intervene in any way with the hostilities in Iraq."  Appellants' Br. 3.[7]  It does not "seek to improve the manner in which President George W. Bush exercised his power and President Obama is exercising his power."  Reply Br. 14.  The plaintiffs further concede that "the War in Iraq obviously cannot be undone by judicial decree or by any other mortal act."  *Id.* at 22.  Given this, they concede that "the redress that Plaintiffs are capable of obtaining here is limited and imperfect."  Appellants' Br. 50.

With these limitations in mind, the plaintiffs speculate that the proposed declaratory relief would, if granted, serve to guide future executive and legislative decision-making.  In particular, the plaintiffs claim that a declaratory judgment from this Court would "necessarily cause the current and future Presidents to refrain from utilizing legislative devices—such as the [Authorization]—to avoid the Constitution's requirement of a Congressional Declaration of War before invading a sovereign state that has not

---

[7] This key fact distinguishes this case from *Massachusetts v. Laird*, 451 F.2d 26 (1st Cir. 1971).  In *Laird*, the plaintiffs brought an action to enjoin ongoing military operations in Southeast Asia.  *Id.* at 28.

attacked the United States." Reply Br. 22–23. We conclude that such speculation is of insufficient "immediacy and reality" to justify a declaratory judgment in this case.[8] *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (internal quotation marks omitted); *see also St. Thomas*, 218 F.3d at 240 ("Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than 'abstract, hypothetical[,] or contingent questions.'") (*quoting Ala. State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945)). Hypothetical wars against possible foes are neither "immediate" nor "real." Furthermore, it is an exercise in judicial guesswork to predict what form such a hypothetical conflict would take, including how the President would choose to proceed and what type of authorization Congress might grant (if any). Given this, it is unclear whether any such conflict would resemble our recent activities in Iraq—and even less clear how a declaratory judgment from our Court in the current case would inform any future actions by the President and Congress.

---

[8] Such an action also runs afoul of the well-recognized prudential limit on our standing to hear actions that constitute "generalized grievances." As the Supreme Court noted in *Lujan*, the Court has

> consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

504 U.S. at 573–74.

\* \* \* \* \*

For these reasons, we agree with the District Court that in this case "[a] judicial declaration of unconstitutionality would be, at best, an advisory opinion not sufficient to redress any of Plaintiffs' claimed injuries." App. 13. Therefore, we affirm the Court's judgment.