SMITH, Circuit Judge,
concurring dubitante.
I join in the excellent opinion authored by Judge Shwartz. I write separately only because I am doubtful that a claim for nominal damages alone suffices to create standing to seek backward-looking relief. While this issue has little practical importance to this case, it does have broad consequences for our standing and mootness inquiries in other scenarios. Furthermore, this appears to be the first time our Court has ruled on this issue.
Because this is a case about standing, I begin my discussion with the standing doctrine. Then, because the doctrines of standing and mootness are closely related, and because there are many more cases discussing the interplay between nominal damages and mootness than there are between that of nominal damages and standing, I next discuss the mootness doctrine and the persuasiveness of these cases. After revisiting the facts of our case, I consider a few hypothetical scenarios that will be impacted by our standing decision today. Finally, I conclude by emphasizing that nothing in this opinion casts doubt on the availability of nominal damages at the conclusion of a suit. I only write to express skepticism that a claim for nominal damages alone would suffice to create standing or save a case from mootness.
I.
That “a plaintiff must demonstrate standing separately for each form of relief sought” is an unremarkable proposition. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). My uncertainty stems from the third requirement of standing: redressability. As the panel opinion points out, in order to satisfy Article III standing, a plaintiff must show that “(1) it has suffered an ‘injury in fact’ that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Id. at 180-81, 120 S.Ct. 693. Outside of quoting this test, the panel opinion discusses only whether there exists an adequate injury in fact, as that is the only prong of the standing inquiry that the parties themselves discuss. Yet of course, we have an independent obligation to determine whether we have jurisdiction. Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).
In order for an injury to be redressable, a plaintiff must show that she “personally would benefit in a tangible way from the court’s intervention.” Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Steel Co. is the only Supreme Court decision to focus on the redressability prong of standing. In that case, the plaintiff alleged that it suffered an injury — namely, that its members’ “safety, health, recreational, economic, aesthetic and environmental interests” were nega *483 tively impacted- — due to the defendant’s failure to file timely and required reports pursuant to federal statute. 523 U.S. at 105, 118 S.Ct. 1003. Assuming that this was sufficient for an injury in fact, the Supreme Court walked through each of the six forms of relief sought by the plaintiff and determined that the organization lacked standing because none of these forms of relief redressed this injury. Id. at 105-09, 118 S.Ct. 1003.
First, the plaintiff sought a declaratory judgment that there was a violation of the federal statute, which was “disposed of summarily” as there was no dispute that there was, in fact, a violation of the statute.[1] Id. at 106, 118 S.Ct. 1003. Second, the plaintiff stated that civil penalties, payable to the United States Treasury, would redress the injury because the payment would provide “vindication of the rule of law,” even if it would not provide “reimbursement for the costs incurred as a result of the late filing.” Id. The Court rejected this argument because, “although a suiter may derive great comfort and joy from the fact that the United States Treasury is not cheated ... psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury.” Id. at 107, 118 S.Ct. 1003. Next, the Court concluded that “investigation and prosecution costs,” which were authorized by statute, could not create standing when it was otherwise absent, because “a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.” Id. at 107, 118 S.Ct. 1003. Finally, the Court concluded that the remaining two forms of relief sought[2] — giving the plaintiff the authority to inspect the defendant’s records and facility and requiring defendant to give the plaintiff copies of compliance reports — were injunctive in nature. Id. at 108, 118 S.Ct. 1003. Such injunctive relief “cannot conceivably remedy any past wrong but is aimed at deterring petitioner from violating [the federal statute] in the future.” Id. Thus, if the complaint “had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm.” Id. However, such a “generalized interest in deterrence” did nothing to remedy the past harm that had occurred. Id.
In holding that the redressability prong of standing was not satisfied, the Court stated, “[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.” Id. at 107, 118 S.Ct. 1003. Thus, even though the plaintiffs sought' several .forms of relief that might allow a suitor to “derive great comfort and joy” or declare that there was, in fact, a violation of the law, id. because none of the forms of relief sought would serve to compensate plaintiffs for their past losses, Article III standing was lacking. Id. at 109-10, 118 S.Ct. 1003.
The question of whether nominal damages, standing alone, serve to confer standing on a plaintiff has never been addressed by this Court, and, with one exception, it does not appear to have been addressed by our sister circuits. However, the principle appears to be the same as that in Steel Co.: just as the “psychic satisfaction” from be *484 ing told that you were right or by seeing a wrongdoer pay monies to the Treasury does not redress past harm, nominal damages do not serve to redress past injury. “Nominal damages are damages in name only, trivial sums such as six cents or $1.” Utah Animal Rights Coal v. Salt Lake City Corp., 371 F.3d 1248, 1264 (10th Cir. 2004) (McConnell, J., concurring) (quoting 1 Dan B. Dobbs, Dobbs Law of Remedies, § 3.3(2), at 294 (2d ed. 1993)). If a plaintiff were seeking to be compensated for past harms, he would seek compensatory damages.
There have been three appellate courts that have explicitly addressed whether a claim for nominal damages alone would suffice for standing purposes. First, the Second Circuit, in Kerrigan v. Boucher, held that a “claim for nominal damages, which is clearly incidental to the relief sought, cannot properly be the basis upon which a court should find a case or controversy where none in fact exists.” 450 F.2d 487, 489-90 (2d Cir. 1971). This holding was reaffirmed two years later in the two-judge concurrence in Hernandez v. European Auto Collision, Inc., 487 F.2d 378, 387 (2d Cir. 1973) (Timbers, J., concurring) (quoting Kerrigan, 450 F.2d at 489-90). However, both of these cases appear to have been largely overlooked, with neither-having been cited with great frequency.
Next, the Eighth Circuit, in what I consider to be a fairly conclusory manner, held that a claim for nominal damages meant that the redressability requirement was satisfied. Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 802 (8th Cir. 2006). The one case that it relied on for support of this proposition, Tandy v. City of Wichita, stated that standing was satisfied because “compensatory or nominal damages can redress [the plaintiffs] injury in fact.” 380 F.3d 1277, 1290 (10th Cir. 2004) (emphasis added). While Tandy does suggest that nominal damages alone would redress an injury in fact, the Tenth Circuit did not have to address this issue due to the presence of a claim for compensatory damages.[3]
In the only case where an appellate court has thoroughly analyzed the relationship between nominal damages and re-dressability, the Sixth Circuit in Morrison v. Board of Education of Boyd County, stated that “[n]o readily apparent theory emerges as to how nominal damages might redress past [harm].”[4] 521 F.3d 602, 610 (6th Cir. 2008). Thus, where the plaintiff sought “nominal damages based on a regime no longer in existence,” the redressa-bility prong of standing was not satisfied because “[t]o confer nominal damages here would have no effect on the parties’ legal rights.” Id. at 611. Instead, the entire purpose of the suit, a challenge to a school district policy that was no longer in effect, id. at 606-07, was to seek prospective relief; a fact that the plaintiffs attorney conceded at oral argument, id. at 610 (noting that counsel acknowledged that “nominal damages are a vehicle for a declaratory judgment”). Allowing the suit to proceed to determine “the constitutionality of an *485 abandoned policy — in the hope of awarding the plaintiff a single dollar' — vindicates no interest and trivializes the important business of the federal courts.” Id. at 611;[5] see also Steel Co., 523 U.S. at 107, 118 S.Ct. 1003 (noting that “[b]y the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier,” but that this “psychic satisfaction” does not redress an Article III injury).
Here Schaub does not seek compensatory damages, but instead seeks only nominal damages, where “the dollar is not the real objective of the litigation.” Utah Animal Rights Coal, 371 F.3d at 1264 (McConnell, J., concurring).[6] As with the request for civil penalties to be paid to the United States Treasury in Steel Co., Schaub seems to be seeking a remedy that does not provide her with any tangible benefit. Instead, she appears to be seeking an “authoritative judicial determination of the parties’ legal rights,” Id. That is prospective relief, not something that nominal damages can redress. Morrison, 521 F.3d at 610-11.
Standing alone, with the claims for in-junctive and declaratory relief analyzed separately, I am doubtful that this “psychic satisfaction [can be] an acceptable Ar-tide III remedy because it does not redress a cognizable Article III injury.” Steel Co., 523 U.S. at 107, 118 S.Ct. 1003; see also N.J. Peace Action v. Bush, 379 Fed.Appx. 217, 222 (3d Cir. 2010) (saying that a remedy of declaratory relief “would not take back the allegedly unlawful orders that [plaintiff] has already obeyed, nor would it provide any concrete compensation for the emotional, psychological, and physical injuries that he has allegedly suffered. Indeed, it is ‘merely speculative’ that any psychic benefits of declaratory relief would redress the emotional, physical, and psychological injuries already suffered by the plaintiffs in this case.” (internal quotation marks omitted)). If this nominal damages claim is really one for prospective relief, then this analysis has already been conducted in the panel opinion. See Kerrigan, 450 F.2d at 489-90 (stating that the claim for nominal damages “is clearly incidental to the [declaratory] relief sought - [and] cannot properly be the basis upon which a court should find a case or controversy”). While not problematic in this case, I would be concerned if our retrospective standing analysis were considered binding on future panels of our Court in factually different *486 cases, hypothetical of which are discussed in Part III.of this opinion.
II.
Plaintiffs first raised the issue of whether nominal damages alone suffice for justi-ciability purposes in order to save the case from mootness if the District Court determined that the claims for injunctive and declaratory relief were mooted by Doe l’s transfer to a different school district. While we are not faced with the specific question of whether a claim for nominal damages could save a case from mootness, it is closely related to the issue that I raise, as the Supreme Court has said that “the doctrine of mootness can be described as ‘the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).’ ” Laidlaw, 528 U.S. at 189, 120 S.Ct. 693 (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)). However, Laidlaw also explained that this phraseology was not entirely accurate, as there is an important distinction between standing and mootness. Id. at 190, 120 S.Ct. 693 (describing this phrase as a “not comprehensive” description of the relationship between standing and mootness). The “[sjtanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake,” while the mootness doctrine involves a “case [that] has been brought and litigated, often ... for years.” Id. at 191-92, 120 S.Ct. 693. While this sunk cost argument “does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lack a^ continuing interest,” this is “surely ... an important difference between the two doctrines.” Id. at 192, 120 S.Ct. 693 (emphasis added); see also Cinicola v. Scharffenberger, 248 F.3d 110, 118 (3d Cir. 2001) (describing the “flexible character of the Article III mootness doctrine” (quoting United States Parole Comm’n v. Geraghty, 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980))). Thus, while the cases involving nominal damages and mootness may be instructive, they do not necessarily dictate what our analysis should be regarding the sufficiency of nominal damages alone to create standing.
Unlike cases addressing the interplay between nominal damages and redressa-bility, there are many cases that have addressed whether a claim for nominal damages saves a case from mootness. I concede that my concerns about nominal damages and justiciability do not appear to be shared by the majority of appellate courts to address the mootness subset of justiciability. However, the one case that has thoroughly examined the issue expresses the same concerns that I raise here. As with the standing inquiry discussed in Part I, we do not have a Third Circuit case directly on point, although we have held that a claim for nominal damages in conjunction with one for punitive damages is enough to avoid mootness. Doe v. Delie, 257 F.3d 309, 314 n.3 (3d Cir. 2001).
Nor has the Supreme Court explicitly addressed this issue. Arizonans for Official English is its one decision touching on the relationship between justiciability and nominal damages. 520 U.S. at 68-70, 117 S.Ct. 1055. In that case, the Court stated that the plaintiffs attempt to wrest a claim for nominal damages from a general prayer for relief would not save a case from becoming moot. Id. at 69-72, 117 S.Ct. 1055. It said that such attempts to save a case from becoming moot by asserting what it characterized as the “nominal dam *487 ages solution to mootness” required, at a minimum, close scrutiny. Id. at 69 & n.24, 117 S.Ct. 1055; id. at 69, 117 S.Ct. 1055 (“It should have been clear to the Court of Appeals that a claim for nominal damages, extracted late in the day from [the plaintiffs] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection.”). Hoyrever, the Court had no reason to either embrace or repudiate whether a valid claim for nominal damages could save a case from mootness, because the party against whom nominal damages were sought — the state — was not a party to the litigation and was also immune to damages claims under 42 U.S.C. § 1983. Id. at 69-70, 117 S.Ct. 1055. At the same time, it did not explicitly hold that there was no “nominal damages solution to mootness.” See id. at 69, 117 S.Ct. 1055 n.24.
It may be that a majority of our sister circuits have conflated nominal damages with actual damages in holding that “[a] live claim for nominal damages will prevent dismissal for mootness.” Bernhardt v. Cty. of Los Angeles, 279 F.3d 862, 872 (9th Cir. 2002); Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001) (stating in dicta that “plaintiffs in election cases could avoid the potential for mootness by simply expressly pleading that should the election pass before the issuance of injunctive relief, nominal money damages are requested.”);[7] Advantage Media, 456 F.3d at 803 (holding that a claim was not moot because the plaintiff “might be entitled to nominal damages if it could show that it was subjected to unconstitutional procedures”). For example, in Bernhardt, the court examined caselaw making clear that nominal damages could be awarded in the event that compensatory or punitive damages were unavailable. 279 F.3d at 872. As discussed further below, this is a different question from whether nominal damages standing alone suffice for standing purposes. Despite acknowledging that “this rule [that standing can save a claim from mootness] has been challenged as ‘inconsistent with fundamental principles of jus-ticiability,’ ” Morgan v. Plano Indep. Sch. Dist., 589 F.3d 740, 748 n.32 (5th Cir. 2009) (quoting Utah Animal Rights Coal., 371 F.3d at 1263 (McConnell, J., concurring)), some courts nonetheless are bound by their prior precedent. Id. at 748 (“This court and others have consistently held that a claim for nominal damages avoids mootness.”); Utah Animal Rights Coal., 371 F.3d at 1262 (McConnell, J., concurring (“The panel was constrained to take jurisdiction in this case because of Tenth Circuit precedent holding that a claim for nominal damages precludes dismissal of the case on mootness grounds.”). Most circuits that have held that nominal damages can prevent mootness reach the result with what I consider to be little analysis of how a claim for nominal damages would redress a cognizable injury,in fact. It is just possible that “the nominal damages solution to mootness” is nothing more than a self-perpetuating myth.[8]
*488 The Eleventh Circuit draws a distinction between claims for procedural due process, where a claim for nominal damages will save a claim from mootness, and other cases, where the case will be moot despite the presence of nominal damages. In DA Mortgage, Inc. v. City of Miami Beach, the court held that “[djamages claims can save a § 1983 claim from mootness, but only where such claims allege compensatory damages or nominal damages for violations of procedural due process.” 486 F.3d 1254, 1259 (11th Cir. 2007). It draws this distinction based on the Supreme Court’s decisions in Memphis Community School District v. Stachura, 477 U.S. 299, 310, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (noting that the basic purpose of damages under § 1983 is compensatory and that “the abstract value of a constitutional right may not form the basis for § 1983 damages”), and Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (approving the award of nominal damages for a violation of procedural due process when actual damages could not be proved). In an unpublished opinion, the Eleventh Circuit reaffirmed its holding that a claim for nominal damages saved a case from mootness only when there was a violation of procedural due process. Freedom from Religion Found., Inc. v. Orange Cty. Sch. Bd., 610 Fed.Appx. 844, 846 n.3 (11th Cir. 2015). While this distinction is one that we could adopt, I am not convinced that the distinction between procedural due process and other violations is an appropriate one for justiciability purposes. Moreover, as discussed further in Part IV, Carey was not a case about justiciability and was more about the availability of nominal damages where other damages claims were ultimately not susceptible to proof.
As the Fifth Circuit acknowledged in Morgan, the first case to challenge the well-accepted view that nominal damages could save a case from mootness was Utah Animal Rights Coalition. In this case, the plaintiffs sought injunctive relief, declaratory relief, and nominal damages in an attempt to force the city to process their applications to protest the Winter Olympics. 371 F.3d at 1254 (majority). However, before the District Court heard argument, the Winter Olympics occurred, rendering the claims for injunctive and declaratory relief moot. Then-Judge McConnell[9] wrote both a majority opinion and a concurrence because he felt “constrained” by Tenth Circuit precedent, which bound the court to hold “that a claim for nominal damages precludes dismissal of the case on mootness grounds.” 371 F.3d at 1262 (McConnell, J., concurring). Judge McConnell concurred so that he could explain why he felt that Tenth Circuit precedent was incorrect, and to urge “either an en banc court or the Supreme Court [to] hold that a case that is otherwise nonjusticiable on account of mootness is not saved by the mere presence of a prayer for nominal damages.” Id. at 1263.
I consider Judge McConnell’s concurrence persuasive. He argues that “nominal damages were originally sought as a means of obtaining declaratory relief before passage of declaratory judgment stat- *489 utesId. at 1265. He cites to extensive scholarship in support of this view. Id. (citing Douglas Laycock, Modern American Remedies: Cases and Materials 561 (3d ed. 2002) (“The most obvious purpose [of nominal damages] was to obtain a form of declaratory relief in a legal system with no general declaratory judgment act.”), 1 Dobbs, supra, at 295 (“Lawyers might have asserted a claim for nominal damages to get the issue before the court in the days before declaratory judgments were recognized.”), and 13A Wright, Miller & Cooper, Federal Practice and Procedure, § 3533.3, at 266 (2d ed. 1984)). In fact, that is the only reason that nominal damages were asserted in our case: even if the claims for injunctive and declaratory relief were technically moot, a holding that there had been a past Establishment Clause violation — and that Schaub would be entitled to nominal damages — would have the practical effect of requiring the school district to take down the Ten Commandments monument. Schaub is not seeking to be compensated for a past constitutional violation; her sole objective is to prevent the alleged constitutional violation from continuing. See Morrison, 521 F.3d at 610 (“No readily apparent theory emerges as to how nominal damages might redress past [harm].”).
Instead of allowing such a claim to proceed in federal court, if we agreed with the District Court that the claims for injunc-tive and declaratory relief were moot, a proper result would be to hold that the claim is non-justiciable. Utah Animal Rights Coal., 371 F.3d at 1262 (McConnell, J., concurring) (“Federal Courts ... are not debating societies to determine whether past actions and defunct ordinances were constitutional. Federal courts exist to resolve live controversies, to remedy wrongs, and to provide prospective relief.”). As in our case, plaintiffs in Utah Animal Rights Coalition did not seek compensatory relief. Thus, Judge McConnell would say that there is “no retrospective relief [the court] could grant that might make them whole for the alleged constitutional violation,” and thus there would be “no point in deciding whether the former ordinance was unconstitutional on its face.” Id.; see also id. at 1263 (stating that a case is not justiciable merely because “a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong”). As Judge McConnell noted, to hold otherwise would allow litigants to avoid mootness of claims for injunctive relief by simply “appending a claim for nominal damages” to the complaint. Id. at 1266; see Van Wie, 267 F.3d at 115 n.4 (“[Plaintiffs in election cases could avoid the potential for mootness by simply expressly pleading that should the election pass before the issuance of injunctive relief, nominal damages are requested.”).
Judge McConnell’s separate opinion on mootness in Utah Animal Rights Coalition served as the analytical underpinning behind the Sixth Circuit’s standing analysis in Morrison. I also find this persuasive, while at the same time acknowledging the weight of precedent from other circuits that support the prevailing view.
III.
None of the cases cited in our opinion addresses a claim for nominal damages, so none had a need to engage in the inquiry into past harm that the panel does. In fact, in this case, Plaintiffs on appeal originally based their claim for nominal damages on “the altered conduct they undertook to avoid the Monument,” not on their unwelcome contact with the monument in the past. Appellant Br. at 41. There is a simple explanation for that: the real remedy sought at the time the complaint was filed *490 was the removal of the Establishment Clause violation and a declaration of its unconstitutionality, not the $1 in nominal damages. The difficulty in concluding that a request for nominal damages suffices to confer standing for past harm is apparent when we consider this case with different facts.
Imagine a scenario in which the school district immediately took down the monument after Schaub complained of it. Nonetheless, she still sued for nominal damages. Would we say that she has standing to sue to remove this monument? Following the analysis conducted in the panel opinion, it seems that we would have to conclude that, due to Schaub’s past interactions with the monument, she would have standing because nominal damages serve to remedy a past harm. Thus, the federal courts would need to adjudicate the merits of this alleged Establishment Clause violation. I am doubtful that this is the case because I do not see how nominal damages redress any past harm outside of the psychic satisfaction of the plaintiff being told that she was right. Steel Co., 523 U.S. at 107, 118 S.Ct. 1003 (holding that a remedy does not redress an injury merely because it allows the suitor to “derive great comfort and joy”); Morrison, 521 F.3d at 611 (“To confer nominal damages here would have no effect on the parties legal rights.”); Utah Animal Rights Coal., 371 F.3d at 1263 (McConnell, J., concurring) (“It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong.”).
Similarly, and more comparable to Utah Animal Rights Coalition, what if we agreed with the District Court that Plaintiffs’ claim for injunctive relief was moot? This appears to be the only reason why Plaintiffs raise the argument that nominal damages would nonetheless preserve their claim, as they never argued that they had standing separate from their claim for in-junctive relief in the District Court. Would we instruct the District Court to rule on the Establishment Clause claim because of the presence of nominal damages? I seriously question whether a “case or controversy” would remain. Id. at 1270 (“If a claim for nominal damages cannot become moot, and is eligible for fees under § 1988 ... plaintiffs may be induced to waste legal and judicial resources by continuing litigation when there is no longer any point to it.”). While neither scenario is before us, they are not outside the realm of possibility.[10] Indeed, they are similar to the facts of Morrison and Utah Animal Rights Coalition. I am concerned that the panel opinion’s analysis will control in similar cases.
IV.
My doubts about the panel opinion’s separate standing analysis of nominal damages does not question the uncontroversial *491 point that a plaintiff may receive only an award of nominal damages for past harm. That is a common occurrence when the finder of fact agrees with a plaintiff that her right was violated but the plaintiff has failed to show actual damage. See, e.g., Carey, 435 U.S. at 266, 98 S.Ct. 1042 (holding that nominal damages would be an appropriate remedy for a procedural due process violation even if the district court ultimately concluded that compensatory damages were inappropriate due to the lack of actual harm); Utah Animal Rights Coal., 371 F.3d at 1264 n.2 (“In some cases, the plaintiff may seek compensatory damages at the outset of trial, but the court may award nominal damages based on the conclusion that the defendant violated the plaintiffs right but the plaintiff could not prove actual damage.”). In fact, the Supreme Court has held that a plaintiff who wins only an award of nominal damages may be entitled to “prevailing party status” for the purposes of seeking attorneys’ fees under 42 U.S.C. § 1988. Farrar v. Hobby, 506 U.S. 103, 116, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O’Connor, J., providing the fifth vote concurring in judgment). At the same time, Justice O’Connor said that where “the plaintiffs success is purely technical or de minimis, no fees can be awarded. Such a plaintiff either has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero.” Id. at 117, 113 S.Ct. 566. She acknowledged that sometimes nominal damages can represent a victory when they vindicate certain rights; but in Farrar, where the plaintiff won an award of $1 out of $17 million sought, and only from the least culpable of six defendants, this was not such a victory even though he had prevailed in showing a constitutional violation. Id. at 120-21, 113 S.Ct. 566. Neither Farrar nor Carey addressed a claim for nominal damages alone, without accompanying claims for compensatory relief.
Thus, if Schaub had sought compensatory damages here for any past harm, then we would have to conduct a backwards-looking standing inquiry. She ultimately may not have been entitled to compensatory damages, and only recovered an award of nominal damages — like the plaintiff in Farrar — but that would not be a bar to finding standing.
Plaintiffs obviously did not seek such compensatory damages at the time their suit was filed because they had not yet made the decision to move Doe 1 to another school district. However, we must address standing at the time the suit was filed, when only the claim for nominal damages was sought. Laidlaw, 528 U.S. at 190, 120 S.Ct. 693 (“[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum.”). Plaintiffs have provided no explanation for how nominal damages would redress any past injury present at the time of the filing of the lawsuit.
V.
For the reasons stated herein, I concur dubitante. On the one hand, most courts to address the impact of nominal damages on a court’s justiciability analysis have held that a claim for nominal damages preserves a live case or controversy and saves a case from mootness. However, nominal damages do not appear to redress any past injury. I wonder if our decision will create binding precedent in our Court for an issue that' I do not think we need to reach. Schaub clearly has standing to seek injunc-tive and declaratory relief. I question the need to conduct a separate standing analysis for nominal damages. Perhaps when this issue is squarely presented and more *492 fully litigated — such as when a plaintiff brings a claim solely for nominal damages or if we are asked to determine whether a claim for nominal damages saves a case from mootness — this issue will be worthy of en banc consideration by our full Court.

. While the Supreme Court had no need to delve further into the declaratory relief sought, it stated in Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 31, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010), that a declaratory judgment is a claim for prospective relief, different from a claim alleging past harm.

. The sixth form of relief sought was "any such further relief as the court deems appropriate." Id. at 105, 118 S.Ct. 1003.

. The Fourth Circuit, in Covenant Media of SC, LLC v. City of North Charleston, similarly suggested that a claim for nominal damages would suffice for standing purposes. 493 F.3d 421, 428 (4th Cir. 2007) (noting that the claim is "redressable at least by nominal damages”). However, like many of the cases that seem to say that a case is saved from mootness at least by nominal damages, the plaintiffs sought both compensatory and nominal damages. See id. at 429 n.4.

. As discussed further below, the Morrison court relied heavily upon then-Judge McConnell's views in Utah Animal Rights Coalition, which addressed the related question of whether a claim for nominal damages prevents a case from becoming moot.

. In ruling that nominal damages alone did not suffice for standing purposes, Morrison did not find itself constrained by the Sixth Circuit’s prior precedent “allow[ing] a nominal-damages claim to go forward in an otherwise-moot case.” Morrison, 521 F.3d at 611 (citing Lynch v. Leis, 382 F.3d 642, 646 n.2 (6th Cir. 2004), and Murray v. Bd. of Trs., Univ. of Louisville, 659 F.2d 77, 79 (6th Cir. 1981)). However, as discussed at the beginning of Part II, while these doctrines are closely related, the mootness doctrine is more flexible due in part to the "sunk costs” of litigation already conducted. See Laidlaw, 528 U.S. at 190-92, 120 S.Ct. 693.

. In their opening brief, Plaintiffs claim that they are entitled to nominal damages to compensate them for "the altered conduct they undertook to avoid the Monument,” not for their unwelcome contact with the monument in the past. Appellant Br. at 41. This injury which they seek to be redressed by nominal damages was not present at the time the suit was filed, as Doe 1 was transferred to a different school district after the commencement of the suit, and thus would not suffice to create standing. Laidlaw, 528 U.S. at 191, 120 S.Ct. 693 (stating that a plaintiff must have standing "at the time the action commences”). Moreover, it is compensatory in nature. However, in their reply brief, Plaintiffs change their argument to one based on their past interaction with the monument. This is the standing analysis that the panel opinion correctly focuses upon.

. However, this dicta is at odds with the Second Circuit's case law on nominal damages and standing. See Hernandez, 487 F.2d at 387 ("Not having found a justiciable controversy permitting a declaration, the claim for nominal damages, which is clearly incidental to the relief sought, cannot properly be the basis upon which a court should find a case or controversy where none in fact exists." (quoting Kerrigan, 450 F.2d at 489-90)). As mentioned earlier, the standing requirement is slightly more rigorous than the mootness doctrine’s greater flexibility, which may explain the difference. See Laidlaw, 528 U.S. at 190-92, 120 S.Ct. 693; cf., supra.

. While the Fourth and Seventh Circuit have not explicitly addressed the issue, they have hinted that a claim for nominal damages alone would prevent a case from becoming moot. See Covenant Media, 493 F.3d at 429 n.4 (noting that the plaintiff's "suit [was] not *488 moot because if [the plaintiff was] correct on the merits, it is entitled to at least nominal damages,” because the suit sought compensatory and nominal damages (emphasis added)); Kelly v. Mun. Courts of Marion Cty., Ind., 97 F.3d 902, 910 (7th Cir. 1996) (holding a claim moot because the plaintiff "failed to mention damages, not even nominal damages”). The First, Federal, and D.C. Circuits do not seem to have indicated their inclination on the subject one way or another.

. On May 5, 2009, Judge McConnell resigned his seat on the Court of Appeals for the Tenth Circuit in order to serve as the faculty director of the Stanford Law School’s Constitutional Law Center.

. In fact, in another case in the Western District of Pennsylvania, the court recognized that this was an issue of first impression for our circuit. It held that a “valid claim for nominal damages” was enough to avoid mootness even though it "seems ‘odd that a complaint for nominal damages could satisfy Article Ill’s case or controversy requirements.' ” Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist., 127 F.Supp.3d 283, 300 (W.D. Pa. 2015) (quoting Utah Animal Rights Coal., 371 F.3d at 1257 (majority opinion)). On the other hand, a court in the Southern District of Indiana recently held that “a claim for nominal damages alone is not sufficient enough to maintain federal court jurisdiction in a case that is otherwise moot.” Freedom from Religion Found., Inc. v. Franklin Cty., Ind., 133 F.Supp.3d 1154, 1160 (S.D. Ind. 2015); see also id. ("By allowing FFR.F to proceed to determine the constitutionality of a policy that has been voluntarily amended to cease illegal conduct, in hope of receiving $1.00, vindicates no rights and is not a task of the federal courts.”).